UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MANUEL F. NUNES, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 14-378L |
| | : | |
| DONNA BUTLER, CUSTODIAL DIRECTOR | : | |
| FOR BROWN UNIVERSITY, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

    Before me for report and recommendation is Defendant Brown University's Fed. R. Civ. P. 12(b)(6) motion to dismiss the complaint of *pro se*[1] Plaintiff Manuel Nunes. 28 U.S.C. § 636(b)(1)(B). Plaintiff accuses Brown of national origin discrimination, retaliation and defamation for accusing him (falsely, he claims) of stealing a bronze plaque from a Brown fraternity and for terminating his employment as a result of the theft. Brown contends that the courthouse door is closed to Plaintiff's federal claims because he waited more than 300 days after termination to file the administrative charge. Brown's motion was preliminarily addressed in a memorandum and order dated April 17, 2015 ("April 17 M&O"),[2] in which the Court found that Plaintiff's filing plainly missed the 300 day deadline by six days, but also raised the question whether he may be able to marshal facts sufficient to clear the extremely high bar in this Circuit for equitable tolling of the filing requirement. ECF No. 24. In the April 17 M&O, I made clear that I would recommend that Brown's motion be granted unless Plaintiff proffered facts,

---

[1] Plaintiff has repeatedly sought more time to engage counsel to represent him for this case and has even justified these requests by filing a copy of a letter reflecting an attempt to engage a specific attorney, with no success. Meanwhile, mindful of the challenge for a *pro se* litigant to establish equitable tolling, particularly if an evidentiary hearing may be required, this Court, unsuccessfully, presented the case to two *pro bono* panel attorneys; both declined the engagement, leaving Plaintiff to proceed *pro se*. As a result of these delays, exacerbated by Plaintiff's repeated requests for more time, Brown's motion has been pending since December 19, 2014, without resolution.

[2] This report and recommendation assumes the reader's familiarity with the April 17 M&O.

preferably under oath, sufficient to satisfy this Court that his claim potentially falls within the "tiny sphere" of "exceptional cases" where the statute of limitations is equitably tolled because the claimant's mental health condition during the critical period when the filing was due was so impaired as to render him incapable of engaging in "rational thought or deliberate decision making." Vazquez-Rivera v. Figueroa, 759 F.3d 44, 50 (1st Cir. 2014); Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 279 (1st Cir. 1999).

Plaintiff has purported to comply with this requirement by producing a notarized letter from the psychiatrist who was treating him during the relevant period. This letter, like all of the other papers that he has filed, must be read with the "extra degree of solicitude" and liberality afforded to all *pro se* litigants. Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991); U.S. ex rel. Vasudeva v. Dutta-Gupta, No. CA 11-114 ML, 2014 WL 6811506, at *4 (D.R.I. Dec. 2, 2014). Read from that vantage, I find that the psychiatrist's letter is sufficient to avoid dismissal at the Fed. R. Civ. P. 12(b)(6) phase of the case. However, I also find that Brown has presented evidence controverting the conclusory statements in the letter sufficient to demonstrate that there is a serious factual dispute regarding Plaintiff's actual capacity during the pertinent period. Accordingly, while I recommend that Brown's motion to dismiss be denied (ECF No. 9), I also recommend that other discovery be stayed so that the parties may proceed with a short period of limited discovery on the issue of equitable tolling, following which Brown or Plaintiff may submit either a motion for summary judgment or a motion for an evidentiary hearing[3] to determine the applicability of equitable tolling, or both, so that this issue, potentially dispositive of this case, may be resolved as expeditiously as possible.

## I.   BACKGROUND

---

[3] The Court will accommodate the parties regarding whether an evidentiary hearing will be conducted by in-person testimony or by the submission of sworn declarations or transcripts.

2

### a. Procedural Background

Plaintiff's *pro se* complaint alleges that, due to his national origin (Portuguese), he was subjected to discrimination and harassment and was falsely accused of stealing a bronze plaque from a Brown fraternity, cutting it up and selling it to a scrap metal facility; based on the pretext of the false accusation, he was fired and then prosecuted criminally. ECF Nos. 1, 5. In his complaint, he alleges that these events caused him physical trauma and mental damages, including depression, high blood pressure, anxiety, stress, headaches, suicidal thoughts, chest pain and other physical and mental ailments. ECF No. 1-1 at 1; ECF No. 5. As stated in the April 17 M&O, to which neither party objected, Plaintiff's claims are most fairly interpreted as arising under Title VII (or possibly the ADEA) for discrimination and retaliation. See 42 U.S.C. §§ 2000e–2(a), 2000e–3(a).

On December 19, 2014, Brown[4] moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff's claims for discrimination and retaliation require exhaustion of administrative remedies[5] such that Plaintiff had to file his charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the date of termination, which was July 27, 2012, for purposes of this motion. Because he did not file by the deadline, May 23, 2013, but rather delayed until May 29, 2013, which is 306 days after July 27, 2012, Brown contends that Plaintiff's claims are time-barred and must be dismissed.

---

[4] The Amended Complaint's caption names "Donna Butler, Custodial Director for Brown University." However, the ruling on 28 U.S.C. § 1915 screening effectively eliminated Ms. Butler as a defendant. She was never served and is not a party. The only defendant is Brown.

[5] Brown's motion is grounded in the rule that as a prerequisite to bringing a civil action for discrimination, the aggrieved employee must properly exhaust administrative remedies. 29 U.S.C. § 626(d); 42 U.S.C. § 2000e–5(e). To accomplish administrative exhaustion, federal law requires the employee timely to file an administrative charge with the EEOC. See 42 U.S.C. § 2000e–5(f); Fantini v. Salem State Coll., 557 F.3d 22, 26-27 (1st Cir. 2009). In Rhode Island, which is a so-called "deferral" jurisdiction, the administrative charge must be filed within 300 days or the courthouse door is closed. See Rivera-Diaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 390 (1st Cir. 2014); Russell v. Enter. Rent-A-Car Co. of R.I., 160 F. Supp. 2d 239, 260 (D.R.I. 2001).

Instead of opposing the motion to dismiss, starting on December 31, 2014, Plaintiff wrote several letters to the Court asserting that his mental status had prevented a timely filing, stating, for example: "[b]ack in July of 2012, the termination of my employment alone pushed me over the edge. It took some time to get the medical help I urgently needed, as [the conduct at issue in the lawsuit] rendered me practically useless." ECF No. 10 at 2; see ECF No. 17 at 1 ("I was so physiologically impaired at the onset of this process, it is only by God's grace that I have made it thus far."). These letters raised the troubling possibility that, as a result of his *pro se* status, Plaintiff had not developed a potentially viable defense based on equitable tolling;[6] to explore this issue further, the Court set the matter down for a hearing. However, Plaintiff responded to the notice of hearing with repeated requests for more continuances: "[s]ince the beginning of my efforts to bring Brown University to court, my emotional stability has spiraled to a new low. I am hanging on by a thread and am actively seeking legal representation." ECF No. 20. After granting two of these requests, and concerned that Plaintiff would never be able to address the matter in person, the Court issued the April 17 M&O. It gave Plaintiff a final chance to present concrete evidence, preferably under oath, establishing facts to support his claim that he is able to meet the high hurdle to equitably toll the statute of limitations, that is, that, from the time of his termination on July 27, 2012, until he filed the charge with the EEOC on May 29, 2013, he suffered from a mental disability that deprived him of the ability to engage in rational thought or deliberate decision making. Vazquez-Rivera, 759 F.3d at 50.

   b.   **Facts Pertinent to Equitable Tolling**

---

[6] It is well settled that the exhaustion requirement is not jurisdictional and therefore may be tolled for equitable reasons. Vera v. McHugh, 622 F.3d 17, 29-30 (1st Cir. 2010); Frederique-Alexandre v. Dep't of Natural & Envtl. Res., 478 F.3d 433, 440 (1st Cir. 2007).

On May 18, 2015, Plaintiff filed three letters: his own notarized[7] letter, one dated May 14, 2015, from psychiatrist Dr. Brandon Qualls, also notarized, and a non-notarized letter dated April 8, 2015, from psychologist Dr. Eugene M. D'Andrea.

Plaintiff's notarized letter states that "[m]y psychiatric condition and treatment are casually (sic) job related all started July 2011 . . . I have always fought hard hanging on by a thread deep scar the mind brain that bleeds 24/7 on dwelling." Dr. Qualls's relatively brief letter confirms he has treated Plaintiff since July 13, 2012; it opines that, during the relevant 300-day period from July 27, 2012, to May 23, 2013, filing the required documents on time "would have been a difficult to impossible challenge for [Plaintiff]." This is so, according to Dr. Qualls, because, during that period, Plaintiff's mental disability "sufficiently impaired him in the area of decision making and time management, i.e. keeping track of filing deadlines." Dr. Qualls reported that he saw Plaintiff during visits on March 13, 2013, and April 17, 2013; at the former encounter, Plaintiff had been off medications for a month for financial reasons, had just resumed medication because he had begun receiving unemployment payments, and was staring blankly with difficulty concentrating and remembering, while at the latter appointment, he had many of the same symptoms. Dr. Qualls's treatment records are not included. The balance of the materials submitted by Plaintiff are from psychologist Dr. D'Andrea whose first appointment with Plaintiff was in March 2015, long after the pertinent period, rendering his submissions irrelevant to the issue of equitable tolling.

On May 29, 2015, Brown responded with a two-pronged attack. First, it argues that Plaintiff's submission – primarily the letter from Dr. Qualls – is inadequate as a matter of law

---

[7] It is not clear whether either Plaintiff or the psychiatrist understood that their letters were written under oath – each simply has a second signature at the foot of the letter with the handwritten notation, "my com expires . . . ." At most, the Court may conclude that they are notarized but not necessarily written under oath.

5

colorably to raise the defense of equitable tolling. Second, it proffers additional facts, which controvert Dr. Qualls's conclusion that Plaintiff was so utterly incapable of managing his affairs during the period from July 29, 2012 through May 29, 2013, as to be incapable of rational thought or deliberate decision making.

In support of the latter argument, Brown relies principally on the facts laid out in a lengthy and detailed decision of the Rhode Island workers' compensation court. <u>Nunes v. Brown Univ.</u>, W.C.C. No. 14-04053 (Feb. 23, 2015), ECF No. 28-1 at 2-38 ("WCC Decision").[8] In this decision, the workers' compensation court grappled with evidence presented at an evidentiary hearing (at which Plaintiff represented himself) pertaining to Plaintiff's argument that Brown's treatment of him at the time of his termination caused all of his mental stress, making it a work related injury. The judge rejected this claim; while he carefully examined the evidence bearing on whether Plaintiff stole the plaque, he ultimately concluded that Plaintiff's nolo contendere plea, entered with advice of counsel, "sealed his fate, because in doing so, he accepted the truth of the charges against him," breaking any causal connection between the stress and anxiety caused by the consequence of the crime and any actions of the employer. ECF No. 28-1 at 37.

The WCC Decision establishes that, in the relevant period, Plaintiff was able to apply for unemployment compensation; as a prerequisite, Plaintiff conceded that he knew that he had to be available for work and be engaged in an active search for work. R.I. Gen. Laws § 28-44-12; <u>DePetrillo v. Dep't of Emp't Sec.</u>, 623 A.2d 31, 33 (R.I. 1993) (unemployment compensation recipient must be available for work and be conducting an active search for work). During his

---

[8] Plaintiff's submission to this Court includes a recent Notice of Settlement Conference issued by the workers' compensation court apparently in connection with an appeal from the decision to the appellate division. R.I. Gen. Laws § 28-35-28. Plaintiff's accompanying letter advises that he submitted the Notice to dispute Brown's assertion that his workers' compensation case had been denied. It should be noted that R.I. Gen. Laws § 28-35-28(b) provides that the factual findings of the trial judge shall be final unless found by the appellate panel to be clearly erroneous.

testimony, Plaintiff confirmed that his job search included sending out resumes and calling a few airlines based on prior experience as an air steward. ECF No. 28-1 at 14. Early in the relevant period, Plaintiff admitted that he had been able to write a card to his superior at Brown professing his innocence. ECF No. 28-1 at 10. Further, several weeks later, in September 2012, he was able to write a letter to another Brown employee claiming that he had been falsely accused. ECF No. 28-1 at 23. Beginning on February 21, 2013, Plaintiff began to receive his unemployment checks and was able to negotiate them. ECF No. 28-1 at 30. Meanwhile, at unknown points during the relevant period, the criminal charge for the stealing of the plaque apparently was pending; while the record does not reveal the timing of anything but that the nolo plea was accepted in March 2014, ECF No. 28-1 at 13, the WCC Decision states that, in January 2013, mid-way through the relevant period, Plaintiff was actively exploring whether to switch criminal attorneys.[9] ECF No. 28-1 at 26. Brown appropriately argues that all of these activities are profoundly inconsistent with the incapacity necessary to establish equitable tolling.

In addition to this direct evidence that Plaintiff was capable of rational thought and deliberate decision making during the relevant time period based on the facts recited by the workers' compensation court judge, Brown also contends that Plaintiff's own statements permit the inference that his condition has been essentially the same from the time of his firing to the present. In support, Brown marshals excerpts from letters written by Plaintiff in late 2014 and 2015, such as: "[t]hroughout this ordeal – I am fighting to remain sound;" "it is only by God's grace that I have made it thus far;" "[s]ince the beginning of my efforts to bring Brown University to court, my emotional stability has spiraled to a new low;" "[e]ver since my

---

[9] There can be little question that proof, during the relevant period, that Plaintiff was actively engaged in the defense of the charge – for example, that Plaintiff appeared to answer the charge, was arraigned, entered a plea, and participated in plea negotiations – would be powerful evidence that he was legally competent and therefore possessed the capability timely to file this action.

7

termination from Brown University I have been in psychiatric care, on heavy medications, unable to function." ECF Nos. 10 at 2, 17 at 1, 20 at 1; Pl.'s Letter (Apr. 14, 2015). Because he clearly has not been profoundly incapacitated either during 2014, when he entered a plea of nolo contendere and performed the community service component of his sentence (by performing custodial duties at a nonprofit club), ECF No. 28-1 at 13, or during 2015, when he has made repeated filings in this case, Brown contends that this inference permits the conclusion that he was equally capable in 2012 and 2013, during the running of the statute of limitations on this claim.

## II.    LAW

Brown's motion arises under Fed. R. Civ. P. 12(b)(6), which permits this Court to dismiss an action for failure to state a claim upon which relief can be granted. See Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (citing Fed. R. Civ. P. 12(b)(6)). Normally, a court evaluating a motion to dismiss examines whether the complaint gives the defendant fair notice of the claim and alleges a plausible entitlement to relief with sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007). In evaluating a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor. Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 52-53 (1st Cir. 2013). The motion normally is laser-focused on the complaint; if the court views extraneous documents, Fed. R. Civ. P. 12(d) requires that it must first be converted to a summary judgment motion with appropriate protections for the rights of all parties to present pertinent materials. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

A defendant may use the procedural tool of a motion to dismiss to assert the affirmative defense of statute of limitations when the facts that conclusively establish the defense are "definitively ascertainable from the allegations of the complaint." Greene v. Rhode Island, 398 F.3d 45, 49 (1st Cir. 2005). And when the defendant makes this showing, the plaintiff may assert in its opposition to the motion to dismiss that mental incapacity equitably tolled the limitations period. Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 119 n.8 (1st Cir. 2009). Contrary to the usual prohibition on introducing material extraneous to the complaint, courts generally require that, to avoid Rule 12(b)(6) dismissal, the plaintiff's assertion of mental incapacity must be accompanied by a proffer sufficient to overcome the reality that equitable tolling is available only in the most "extreme cases." Vazquez-Rivera, 759 F.3d at 50; see Melendez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.3d 30, 37, 39 (1st Cir. 2001) (equitable tolling is remedy usually resolved by judge instead of jury, available only in extreme cases).

Nunnally v. MacCausland is the seminal case in this Circuit – it defines the standard for equitable tolling based on mental incapacity by analogy to the state-law standards for "insanity" and legal "incompetence," where the inquiry is whether the plaintiff's mental illness rendered him "unable to protect his legal rights because of an overall inability to function in society" and thus "unable to manage his business affairs, or to comprehend his legal rights and liabilities." 996 F.2d 1, 5 (1st Cir. 1993). Nunnally equates these state-law competency principles to the inability "to engage in rational thought and deliberate decision making sufficient to pursue his claim alone or through counsel." Id. This standard – the inability to engage in rational thought and deliberate decision such that an applicant is unable understand or act on his rights – has been applied since Nunnally as the test for equitable tolling in this Circuit. See Vazquez-Rivera, 759 F.3d at 50; Bartlett v. Dep't of the Treasury, 749 F.3d 1 (1st Cir. 2014). These decisions

9

emphasize that the foundation for equitable tolling can be laid only in a "tiny sphere" of "exceptional cases," and that the "heavy burden" of establishing equitable tolling rests on the plaintiff. Vazquez-Rivera, 759 F.3d at 50; Bonilla, 194 F.3d at 279.

In light of this heavy burden, a plaintiff resisting a Fed. R. Civ. P. 12(b)(6) motion to dismiss based on the running of the applicable statute of limitations must submit concrete evidence, preferably under oath, of a mental illness that created limitations so severe during the relevant period as to render him unable to act. Vazquez-Rivera, 759 F.3d at 50-51. Once a plaintiff makes such a proffer, the cases permit the district court to deviate from the usual principle limiting it to the four corners of the complaint and to evaluate the viability of the plaintiff's proffer. Id.; but see Bartlett, 749 F.3d at 12-14 & n.40 (affirming grant of motion to dismiss based on lack of sworn statement supporting claim of debilitating depression but also suggesting motion should have been converted to summary judgment, while finding failure to "formally convert" harmless). In so doing, however, the court must remain focused on the Fed. R. Civ. P. 12(b)(6) decisional imperative – that all factual assertions must be accepted as true and all inferences must be drawn in favor of the plaintiff. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 68, 71-73 (1st Cir. 2014). If the plaintiff's proffer of mental incapacity is nevertheless insufficient, the case should be dismissed. See Rivera-Diaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 390-91 (1st Cir. 2014).

To illustrate, in Vazquez-Rivera, the court determined that merely submitting an unsworn letter from a psychiatrist suggesting a diagnosis of severe depression is not enough to avoid a motion to dismiss; rather, the claimant must present concrete evidence, such as a sworn affidavit, establishing a profound lack of mental capacity during the specific period when the filing should have been made. 759 F.3d at 50-51; see Rivera-Diaz, 748 F.3d at 390-91 (motion to dismiss

10

granted because plaintiff identified "no circumstances beyond his control that might have prevented him from filing suit in a timeous manner"). On the other hand, if Plaintiff's proffer amounts to a colorable claim that equitable tolling might be applicable, the case should proceed past the motion to dismiss. See Kesoglides v. Comm'r of Soc. Sec., No. 113-CV-4724 PKC, 2015 WL 1439862, at *4-5 (E.D.N.Y. Mar. 27, 2015); Chalasani v. Fran, No. 13-CV-06535 LAK SN, 2015 WL 2129773, at *7-8 (S.D.N.Y. Feb. 13, 2015).

Once the plaintiff's proffer passes muster, the court deciding a Fed. R. Civ. P. 12(b)(6) motion must disregard defendant's contrary facts disputing the claim of mental incapacity, refrain from fact finding and deny the motion. See Fontaine v. Potter, No. 10-cv-279-SJM-DLM, 2011WL 809555, at *2-5 (D.R.I. Mar. 2, 2011) (where plaintiff and defendant both presented medical evidence dehors the pleadings on Fed. R. Civ. P. 12(b)(6) motion, motion denied and defendant's material disregarded; equitable tolling to be determined either at summary judgment or by evidentiary hearing). Instead, the claim of entitlement to equitable tolling is best decided at a stage where the record is more fully developed. Under such circumstances it is appropriate for the Court to set a short period for discovery targeted on equitable tolling. See Chavez v. Credit Nation Auto Sales, Inc., 966 F. Supp. 2d 1335, 1349 (N.D. Ga. 2013). At the close of such limited discovery, each side should then have the opportunity to move for summary judgment or to request an evidentiary hearing. See Tate v. C.E. Bradley Labs., Inc., No. 2:12-CV-216, 2013 WL 3560970, at *3 (D. Vt. July 11, 2013) (citing cases). The equitable nature of the issue permits it to be resolved by an evidentiary hearing at which the judge decides disputed questions of fact. Melendez-Arroyo, 273 F.3d at 38-39 (district court resolves disputed issues of fact pertaining to equitable tolling unless they are so intertwined with merits that they should be reserved for jury); see Montin v. Estate of Johnson,

636 F.3d 409, 415 (8th Cir. 2011) (citing Melendez-Arroyo and stating equitable tolling is a "court-issued remedy"); Upadhyay v. Sethi, No. 10 CIV 8462 NRB, 2012 WL 1195233, at *1 (S.D.N.Y. Apr. 5, 2012) ("Courts have the authority to resolve questions of equity . . . and equitable tolling is no different").

## III. ANALYSIS

Focusing on the letter from Dr. Qualls, the only arguably competent evidence of Plaintiff's incapacity during the relevant period, Brown argues that it is insufficient to sustain Plaintiff's "heavy burden" of establishing equitable tolling. Vazquez-Rivera, 759 F.3d at 50. Emphasizing that equitable tolling is an exceedingly difficult standard to meet, found only in "extreme cases," to be employed "sparingly," Melendez-Arroyo, 273 F.3d at 37, Bonilla, 194 F.3d at 278, Brown asserts that Dr. Qualls's opinion that Plaintiff's mental disability "impaired him in the area of decision making and time management" fails to establish the inability "to engage in rational thought and deliberate decision making sufficient to pursue his claim alone or through counsel" or that Plaintiff was unable understand or act on his rights. See Bartlett, 749 F.3d at 12; Vazquez-Rivera, 759 F.3d at 50; Nunnally, 996 F.2d at 5-7. Even if Dr. Qualls's conclusion that Plaintiff has "a mental disability so severe as to have [been] difficult or next to impossible to meet the time requirement for filing his papers" is accepted as true, as it must be at the Fed. R. Civ. P. 12(b)(6) phase, Brown contends that it fails to wedge this complaint into the "tiny sphere" of "exceptional cases" where equitable tolling has saved a complaint filed out of time. Bonilla, 194 F.3d at 279; see Vazquez-Rivera, 759 F.3d at 50-51. Read with all inferences in favor of Plaintiff, Brown posits that Dr. Qualls's opinion nevertheless fails to demonstrate that "plaintiff suffer[ed] from a chronic mental illness, . . . [and] that he was *actually impaired during*

12

*the relevant time period.*"  See Viti v. Guardian Life Ins. Co. of Am., 817 F. Supp. 2d 214, 229 (S.D.N.Y. 2011) (emphasis in original); Fontaine, 2011 WL 809555, at *5.

Brown overstates its argument that Dr. Qualls does not opine that Plaintiff was so incompetent during the relevant period that he could not engage in rational thought and deliberate decision making. The letter clearly focuses on the relevant time period and expressly opines that Plaintiff's "mental disability had sufficiently impaired him in the area of decision making" so that timely filing was "a difficult to impossible challenge for him." ECF No. 27 at 2. Plainly, Dr. Qualls does not limit his opinion to the proposition, as Brown asserts, that Plaintiff had a hard time meeting deadlines and was only preoccupied, depressed and obsessed with the events he was experiencing. I find that that the Qualls letter is enough. Mindful of Plaintiff's *pro se* status, it is sufficient to demonstrate that there is a material (albeit disputed) question of fact regarding equitable tolling. See Tate, 2013 WL 3560970, at *3 ("Although the dates set forth in [the plaintiff's] submissions do not completely fill the time period . . . [it is] sufficiently close in time to raise a reasonable inference as to his condition at the pertinent time."). That is all that is required at this early stage of the case. See Viti, 817 F. Supp. 2d at 231-32 (case survives motion to dismiss if plaintiff could make out facts showing entitlement to tolling such that action might be timely). Accordingly, I recommend that the motion to dismiss be denied.

Mindful of Brown's strong factual showing that it may nevertheless prevail either at summary judgment or based on an evidentiary hearing, I further recommend that, for a ninety-day period, the Court stay all discovery except for discovery limited to the issue of equitable tolling (so that the Court may consider such evidence as the relevant medical records and the court docket in connection with the criminal charge). At the close of the limited-purpose discovery period, either side may move promptly for summary judgment or request an

13

evidentiary hearing. Further, in light of Plaintiff's passionate submissions establishing that he did not wish to attend a court hearing, to the extent that the parties prefer it, the evidentiary hearing may be conducted by the submission of affidavits and transcripts of testimony from which the Court may resolve disputed issues fact.

## IV. CONCLUSION

Based on the foregoing, I recommend that Brown's motion to dismiss be denied (ECF No. 9) without prejudice to its right to assert its statute of limitations defense by a motion for summary judgment or by an evidentiary hearing. To facilitate expeditious resolution of the issue, I further recommend that, for a ninety-day period, the Court stay all discovery except for discovery limited to the issue of equitable tolling. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 17, 2015